## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**MIGUEL and INGA GUTIERREZ,**

      **Plaintiffs,**

**vs.**                              **No. CIV 06-0937 RB/WPL**

**THOMAS SCHWANDER, an individual acting
in conspiracy with those acting under the color of
state law, KERRIN SCHWANDER, JOHN S. GORDON,
ELIZABETH A. GORDON, MARK BOLINGER,
PHILLIP SIMPSON, WILFORD (RAY) QUICK,
BRENDA ROGERS, OTERO COUNTY SHERIFF'S OFFICE,
SHERIFF JOHN BLANSETT, in his individual capacities, acting
under color of state law, DAVID HENLEY, undersheriff in his
individual capacities, acting under color of state law, CAPTAIN
NORBERT SANCHEZ, in his individual capacities, acting under
color of state law, SGT. TOM SKIPWORTH, in his individual
capacities, acting under color of state law, DEPUTY FRANK
BRIETBACH, in his individual capacities, acting under color of
state law, DEPUTY ALFONSO GUTIERREZ, in his individual
capacities, acting under color of state law, DEPUTY STEVE ODOM,
in his individual capacities, acting under color of state law, DEPUTY
DANIEL ESTRADA, in his individual capacities, acting under
color of state law, DEPUTY CHARLES WOLF, in his individual
capacities, acting under color of state law, NM STATE POLICE
OFFICER MARK DAVIS, in his individual capacities, acting under
color of state law, JOAN BRUMAGE, 12th JUDICIAL DISTRICT
ATTORNEY'S OFFICE in their official capacities, OTERO COUNTY
BOARD OF COUNTY COMMISSIONERS, in their official capacities,
LISW PAIGE VISCARRA in her individual capacities, acting under
the color of state law,**

      **Defendants.**

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before the Court on (i) the Otero County Sheriff's Office's, Sheriff

John Blansett's, David Henley's, Norbert Sanchez's, Tom Skipworth's, Leon Ledbetter's, Frank

Breitbach's, Alphonso Gutierrez's, Steve Odom's, Daniel Estrada's, Charles Wolf's and the Otero

Board of County Commissioners' (hereinafter collectively referred to as the "Otero County Defendants") Motion for Summary Judgment on the remaining claims brought against these Defendants[1], acting in either their official or individual capacities; and (ii) Defendant State Police Officer Mark Davis' Motion for Summary Judgment, also based on qualified immunity.  *See* Docs. 194, 255.  Both Officer Davis and the Otero County Defendants contend that all of the Plaintiffs' claims brought under 42 U.S.C. § 1983 must be dismissed because the Plaintiffs have not established that the Defendants violated any of the Plaintiffs' constitutional rights.  The Otero County Defendants also contend that the Plaintiffs have failed to support their conclusory allegations of violation of the Americans with Disabilities Act ("ADA") and the Fair Housing Act ("FHA") with any evidence.  Having carefully reviewed the record, the briefs[2], and the applicable law, the Court concludes that summary judgment should be granted in favor of the Otero County Defendants and Officer Davis on these claims.

I.     **Legal Standards.**

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Once the moving party makes a summary-judgment challenge, the opposing "party may not rest upon the

---

[1]   The Court previously dismissed several claims brought against all Defendants, including conspiracy claims under 42 U.S.C. § 1985, claims under 42 U.S.C. § 1986, any claims for violation of either Title I or III of the Americans with Disabilities Act, and all but one claim brought under the Fair Housing Act.  *See* Doc. 127.

[2]   The Plaintiffs have not responded to Officer Davis' Motion for Summary Judgment.  But they filed two surreplies without leave of the Court to the Otero County Defendants' Motion for Summary Judgment after the Otero County Defendants filed their reply and a notice that briefing was complete.  *See* Doc. 213, 222.  The surreplies contain many new arguments and several additional exhibits.  Despite the Plaintiffs' disregard of the local rules, *see* D.N.M.L.R. 7.6(b), the Court has considered the arguments and the exhibits.

mere allegations and denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of fact is "genuine" if the evidence is "significantly probative" "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248-50.  Mere assertions or conjecture as to factual disputes are not enough to survive summary judgment.  *See Branson v. Price River Coal Co.*, 853 F.2d 768, 771-72 (10th Cir. 1988).  In ruling on a motion for summary judgment, a Court does not weigh the evidence or make credibility determinations, *see Gossett v. Okla. ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1175 (10th Cir. 2001), but determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.  And in making this determination, the Court must construe all the facts in the record as well as the reasonable inferences that can be drawn from those facts in a light most favorable to the nonmoving party.  *See Worrell v. Henry*, 219 F.3d 1197,1204 (10th Cir. 2000).

The doctrine of qualified immunity is "designed to protect public officials from spending inordinate time and money defending erroneous suits at trial." *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000).  When a public official raises qualified immunity as an affirmative defense for alleged violations of § 1983 on a motion for summary judgment, "the plaintiff bears the heavy two-part burden of demonstrating that (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established at the time of the alleged conduct." *Reeves v. Churchich*, 484 F.3d 1244, 1250 (10th Cir. 2007).  "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment-showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Nelson*, 207 F.3d at 1206 (internal quotation marks omitted).

## II.        Analysis.

### A.        Section 1983 claims against the Otero County Sheriff's Office and its officers.

Section 1983 creates a claim against a person "who, under color of any statute, ordinance, regulation, custom, or usage, of any State" deprived another of his federal constitutional or statutory rights. 42 U.S.C. § 1983.  In their second amended complaint, the Plaintiffs allege that Sheriff Blansett "issued a policy statement regarding treating the Plaintiffs differently due to Miguel's disability and conspired with the other defendants and officers under his control to stop the Plaintiff's [sic] complaints and drive them out of the area by any means possible."  Doc. 168, ¶ 16.

As to the other county officer-defendants, the second amended complaint alleges that Undersheriff Henley "conspired with the other defendants" to implement "policies and actions against the Plaintiffs to drive them out of the area by any means possible."  *Id.* ¶ 17.

The complaint alleges that Captain Sanchez "had twice been out to the area and failed to stop the transgressions against the Plaintiffs but instead worked in unison with the other defendants against the Plaintiffs to drive them out of the area by any means possible."  *Id.* ¶ 18.  The complaint states that, after Defendant "Gordon called the Otero County Sheriff's Office [in April 2004] to report that a neighbor [] was beginning to argue with the other neighbors," Sanchez only "wrote a report of a suspicious person and did not follow up to the report at all . . . [thereby] fail[ing] in his duty to fully investigate incidents as required by the State Laws of New Mexico," *id.* ¶ 41.  The Plaintiffs attached to their response a copy of Captain Sanchez's incident report, dated 4/27/04, wherein he reported Elizabeth Gordon's and Thomas Schwander's statements that, soon after Miguel moved into the neighborhood, he began to argue with his neighbors and threatened to "shoot anyone who comes on his property."  Doc. 205, Ex. A.  The Plaintiffs also attached to their second surreply some of Miguel's medical records from the VA hospital.  On January 18, 2005, a clinical

4

nurse noted that she had received a call from one of the Plaintiffs' neighbors (who the Plaintiffs believe was Defendant Elizabeth Gordon) who stated that she was worried that Miguel was paranoid, that he was brandishing an AK47 weapon, that he had stated when he first moved to the neighborhood that he was a "trained killer [who] was not afraid to kill anyone trespassing his land," and that he was getting "more aggressive and agitated." Doc. 222, Ex. A at 2-3. The nurse's notes state that the neighbor had an appointment with the Sheriff's office the next morning, January 19. *See id.* at 3. The nurse recorded that she spoke with Captain Sanchez on January 20, 2005, and that Sanchez stated the Sheriff's office had gone out to check on Miguel's welfare, but that Miguel had not answered his door and "took off up the ridge;" that Sanchez was concerned with Miguel's threatening behaviors; and that the situation was "escalating." *Id.* at 1. The clinical nurse's notes state that she and Captain Sanchez discussed the "best ways to have vet seen for MH care" and a follow-up note stated that a psychiatrist spoke with and assessed Miguel that same day and arranged for follow-up care. *See id.* at 1-2.

The Plaintiffs filed an excerpt from the HUD investigation report into a HUD discrimination complaint that Miguel filed against several people. The excerpt states that other VA medical records Miguel submitted to HUD state that Miguel admitted to his VA counselor on March 7, 2005 that he had been carrying an AK47 assault rifle and "shooting it into the ground." Doc. 213, Ex. 1.

The second amended complaint alleges that Sergeant Skipworth "abused his position" by "ordering a[n unnamed] subordinate to help Mr. Schwander 'get' the Plaintiff Miguel and file charges against him" and by participating "in illegally transporting the Plaintiff/Victim Inga Gutierrez to the Las Vegas Mental hospital" without presenting "a court order." Doc. 168 at ¶ 19. In conjunction with this allegation, the Plaintiffs attached a police report filed on February 13, 2005 by Deputy Breitbach after he and three other officers, including Sergeant Skipworth, investigated

a complaint from the Schwanders regarding "an ongoing neighbor dispute" and interviewed them, the Gordons, and Miguel. *See* Doc. 213, Ex. 4. According to the report, Miguel said the Gordons were upset because he had moved his property fence into the middle of the road easement the Gordons claimed they had been using to access their property for over ten years. *See id.* at 2-3. The report noted that, on February 7, Thomas Schwander had called the Sheriff's office to complain that Miguel came to his property, cursing and threatening to "kick [Schwander's] ass" and that Schwander felt "in fear of an immediate battery." *Id.* at 3. According to Schwander, earlier that day, Schwander and Inga were involved in an incident where Inga ran in front of his tractor while Schwander was working on the Gordon's easement. Schwander alleged that Inga told him to get off her land, and that when he started to leave, she "jumped between his tractor and the implement he was using . . . and started to grab at the hoses and wiring on his tractor." *Id.* at 4. When Schwander stated that he had tried to file a complaint against Miguel in Magistrate Court, but was unable to "get the help he needed," Sergeant Skipworth "asked [Breitbach] to assist Mr. Schwander" and Breitbach stated that he would forward a criminal complaint with a copy of his report to the Magistrate Court to have Miguel summoned into court for assault. *See id.* at 3-4.

The second amended complaint alleges that Sergeant Ledbetter "signed arrest orders and even violated the Plaintiffs [sic] property rights under the guise of a non-existent court order allowing and facilitating the Defendants Elizabeth Gordon and Thomas Schwander to survey the Plaintiff's [sic] property in violation of state and federal law, even threatening the Plaintiffs if they tried to stop the illegal survey, trespass and property rights violations in which one of the trespassers was heavily armed against the Plaintiff's [sic] orders and in clear view and approval of the officers." Doc. 168 at ¶ 20.

Plaintiffs make several allegations against Deputy Breitbach, including that he "violated a

trusted medical condition given to him by the Plaintiff to help him; instead he used it to violate the Plaintiff's [sic] rights and even falsely charging him to drive the Plaintiffs out of the property, in addition to tailoring his reports in favor of the Gordons and Schwanders." *Id.* ¶ 21.  This allegation is associated with Miguel's May 13, 2004 call to the Otero County Sheriff's office to inform it that the neighbors were complaining that "Plaintiffs had blocked access to the BLM" land adjoining their property and that Miguel suffered from PTSD and other conditions and could not take harassment. *See id.* ¶ 44.  In addition, the Plaintiffs allege that they made two calls in July 2004 complaining that Gordon was trespassing and photographing them and that her dogs had attacked the Plaintiffs' dogs, but that Breitbach "refused to take any action, telling the Plaintiffs to ignore" the activity, and that Breitbach failed to file a report on the alleged dog incident, *id.* at ¶¶ 51, 53.  They further allege that, in February 2005, Defendant Schwander hit Inga with the drag on his tractor, but when she called the Sheriff's Office to complain, Deputy Breitbach said "there was nothing he could do[, and] [h]e did not go to the scene, investigate, or do his duty and charge Mr. Schwander with leaving the scene of an accident with injuries." *Id.* ¶ 68.  But, as discussed *supra*, Breitbach's February 13, 2005 report that the Plaintiffs submitted with their first surreply contradicts the Plaintiffs' contention that Breitbach did not investigate the incident.

The Plaintiffs allege that Deputy Gutierrez violated their rights by "assisting Sergeant Ledbetter with Thomas Schwander and Elizabeth Gordon in violating the Plaintiff's [sic] property and constitutional rights under the guise of a court order, threatening Inga Gutierrez with arrest for stating that the officers did not have a court order," in May 2005 when Schwander and Gordon were attempting to survey the area to determine the boundaries of the Plaintiffs' property.  *See id.* ¶ 85. They also allege that Gutierrez "falsely arrested the Plaintiffs and conspired with the other defendants to force the plaintiffs off of their property by any means possible" and allegedly

"perjured himself under oath on July 6, 2006." *Id.* ¶ 22.  The false-arrest complaint is apparently related to a June 2005 incident where, responding to a 911 call, Gutierrez investigated a physical altercation between the Plaintiffs and three bicyclists who were trying to use the road to access BLM land.  After investigation, Gutierrez arrested and charged both Plaintiffs with assault. *Id.* ¶ 92. Plaintiffs allege that Deputy Odum, who also investigated the June 2005 incident, also "falsely arrested the Plaintiffs and blatantly perjured himself at a hearing on 22 March 2006," and "on July 6, 2006[, and]. . . falsified reports and other transgressions to drive the Plaintiffs out of the area by any means possible," *id.* at ¶ 23.  The Plaintiffs contend that, on "November 6, 2006, Deputy Odom again gave a false statement to a judge about Plaintiff Inga, in an attempt to have her jailed." *Id.* ¶ 126.  The Plaintiffs attached to their response a copy of Deputy Odom's June 26, 2005 investigation report regarding the incident with the three bicyclists.  After ascertaining that two of the bicyclists had visible injuries that they claimed were inflicted by Inga and Miguel; that neither Miguel nor Inga stated that they were hurt or needed medical assistance (although the Plaintiffs claimed that one of the bicyclists pushed Inga down when he tried to go around Miguel's truck that Miguel had parked to block their access); that two bicycles were visibly damaged; that Inga admitted to having used a t-post to strike the bicycles; and that both Inga and Miguel, who was armed with a holstered pistol, stated that they took their actions in defense of their property to keep the bicyclists from using the trail easement, Deputies Odom and Gutierrez arrested the Plaintiffs for assault and battery.  *See* Doc. 205, Ex. 5.

The Plaintiffs further allege that Deputy Estrada "worked in unison with the rest of the defendants to deny the Plaintiffs their rights under the constitution," Doc. 168 ¶ 24; and that Deputy Wolf "worked in unison with the neighbors and other officers, writing a false report, bringing false charges against Plaintiff Inga Gutierrez, [and] denying the equal rights and treatment of the Plaintiffs

in accordance with the Constitutions of the US and the State of New Mexico," *id.* ¶ 25.  These claims are related in part to a complaint the Plaintiffs made in March 2005 about neighbors trespassing on their property.  The Plaintiffs claim that Deputies Wolf and Estrada viewed a tape the Plaintiffs made of the trespassing incident, "but refused to do anything about it" after talking with the neighbors.  *Id.* ¶ 75.  They contend that, in November 2005, Estrada again refused to arrest bicyclists who were using the disputed trail to access BLM land.  *Id.* ¶ 98.

The Plaintiffs submitted a copy of Officer Slater's May 3, 2005 report recording his investigation of the Plaintiffs' complaint that Schwander, who did the road maintenance for everyone in the subdivision with a tractor, had illegally moved a tree trunk and railroad tie from the Plaintiffs' land and their accusation that Schwander illegally moved a survey stake from its proper location on their land.  *See* Doc. 205, Ex. 2.  Slater's report stated that he needed to do more investigation to determine the proper site of the stake and that Schwander denied moving the tree trunk or illegally moving the railroad tie.  *See id.*

In summary, the Plaintiffs contend that, before they moved to the isolated community, their neighbors "constructed an illegal road through the [] property with no easements [to access BLM land]," and that, after the Plaintiffs moved there, fenced the property, and placed a locked gate to keep anyone from accessing the trail, the neighbors

> attempted to force the Plaintiffs to open it up to them through threats, harassment and other means.  Plaintiffs asked the Otero County Sheriffs Office to help them and revealed in private Miguel's special disabling conditions.  Acting through their agents, the Otero County Sheriff's Office, the defendants began a systematic physical invasion, invasion of privacy, physical attacks and filing criminal charges by false affirmations [based on] statements [by] Thomas Schwander . . . .The Otero County Sheriff's Office, acting as their agents, conspired with the defendants and openly violated state laws and the constitutional rights of the Plaintiffs to assist the defendants in accomplishing this goal violating the Plaintiffs rights to be safe and secure in their home, possessions and free from unlawful arrest and seizure.

Doc. 68 at 12.

Referencing the criminal and civil complaints that have been filed against them in state

court,

> [t]he Plaintiffs allege violations to be free of malicious prosecution, right to be free
> of unlawful searches and seizures, their right to the lawful interest in their property
> and the right to not be falsely arrested without due process of the law.

*Id.* ¶ 138.

Regarding their claims that the Otero County Sheriff's Office and its officers violated §

1983, the Plaintiffs assert,

> 149. The defendants did on various occasions ignore enforcements that have not
> been properly enacted by the State of New Mexico. The defendant's [sic] actions
> constitute extortion to try and force the Plaintiffs to give up their rights and their
> property.  Instead of using the legal process prescribed in the laws, all defendants
> used force, arrest, intimidation, perjury, and psychological terror on the Plaintiffs.
>
> 150. Their actions were deliberately indifferent to the rights and equal treatment
> under the laws of the Plaintiffs and their rights and immunities guaranteed under
> the Constitutions of both the United States and the State of New Mexico.

Doc. 168 ¶¶ 149-150.

In support of their motion for summary judgment, Sheriff Blansett and Captain Sanchez

submitted affidavits averring that Sheriff Blansett had never been to the Plaintiffs' property; that

"there has been no direct or indirect, written or unwritten policy to discriminate against" the

Plaintiffs; that their officers' visits to the Plaintiffs' property were always in response to calls from

the Plaintiffs or related to court orders; and that the officers have "attempted to act in 'good faith'

in response to the conflicting issues between all the participants involved in the continuing property

disputes" with the Plaintiffs.  Doc. 195, Exs. 1, 4.  The Defendants attached an interrogatory

response prepared by the Plaintiffs showing that the Plaintiffs had not produced any evidence of a

policy to discriminate against the Plaintiffs.  *See id.* Ex. 2.  In response to the allegations that officers illegally transported Inga to the Las Vegas Mental hospital without presenting a court order, the Defendants attached a copy of the state-court Order instructing the Sheriff's Office to transport Inga to the hospital for evaluation.  *Id.* Ex. 3.

"The general rule of qualified immunity is intended to provide government officials with the ability reasonably to anticipate when their conduct may give rise to liability for damages." *Anderson v. Creighton*, 483 U.S. 635, 646 (1987) (internal quotation marks and bracket omitted).  Police officers performing discretionary functions are entitled to qualified immunity from suit "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *See id.* at 638.  This doctrine "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

> [Courts] analyze the constitutionality of a warrantless arrest under the probable cause standard.  A police officer may arrest a person without a warrant if he has probable cause to believe that person committed a crime.  Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense.  When a warrantless arrest is the subject of a § 1983 action, the defendant arresting officer is entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest the plaintiff.  Even law enforcement officers who reasonably but mistakenly conclude that probable cause is present are entitled to immunity.

*Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (internal quotation marks and citations omitted).

A plaintiff alleging absence of probable cause must "show that the information known to [the arresting police officers] did not establish probable case." *Id.*  Here, based on what the bicyclists told the officers, the bicyclists' visible injuries, the damage to the bicycles, the Plaintiffs' assertions that their actions were justified in defense of their property, and the inextricable intertwining of the

factual scenario related to both Plaintiffs, "a reasonable officer could have believed that probable cause existed to arrest" Inga and Miguel as a matter of law, even if Miguel was later acquitted of assault charges. *See id.*

As to the claims against the individual officers for malicious prosecution, based on allegedly perjured testimony, either under state law or under § 1983, a ruling or judgment in the Plaintiffs' favor that the officers perjured themselves when testifying about their investigations of the June 2005 incident and the Plaintiffs' resulting arrests "would necessarily imply the invalidity of any conviction or sentence that might result from prosecution of the pending charges." *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 557 (10th Cir. 1999). The Plaintiffs' claims for malicious prosecution against the officers are, therefore, barred in federal court as premature unless and until Inga's underlying conviction is reversed in her favor. *See id.* And because Inga was convicted for the acts for which she was arrested, probable cause for her arrest is conclusively established and precludes a subsequent civil action until the conviction or sentence is overturned or invalidated. *See id.* at 556-57.

Further, it does not violate an individual's constitutional right when an officer, faced with conflicting complaints and testimony or with complaints that do not indicate an imminent or immediate risk of injury, chooses not to intervene or file charges against an alleged trespasser especially where, as here, the plaintiff is alleging trespass on what appears to be a trail that has previously been used for public access to public lands and the validity of the easement has not been resolved in the courts. "[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *cf. Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 768 (2005). In *Town of Castle Rock, Colo.*, the Supreme Court held that the plaintiff, who filed suit under § 1983 after police officers failed to

12

enforce a restraining order "did not, for purposes of the Due Process Clause, have a property interest in police enforcement of the restraining order against her husband," and noted that

> the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations. This result reflects our continuing reluctance to treat the Fourteenth Amendment as 'a font of tort law.'

545 U.S. at 768 (certain internal quotation marks omitted).

Finally, the county officers are entitled to qualified immunity for having obeyed the court order requiring them to transport Inga to a medical center for evaluation. "[T]he seizure of a person for an emergency mental health evaluation is a restriction on the fundamental right of personal liberty and so is governed by the reasonableness requirement of the Fourth Amendment." *Meyer v. Bd. of County Comm'rs of Harper County, Okla*., 482 F.3d 1232, 1239 (10th Cir. 2007). As a matter of law, a court order referencing a doctor's certification that emergency commitment is necessary provides "reasonably trustworthy information sufficient to lead a prudent police officer" to believe that probable cause exists, and he must obey the order rather than "to interpose his own medical judgments of a person's condition for those of a licensed physician." *See Pino v. Higgs*, 75 F.3d 1461, 1468-69 (10th Cir. 1996). The Plaintiffs have offered nothing to show that the officers acted unreasonably, and therefore have failed to allege a constitutional violation under the Fourth Amendment.

While the Plaintiffs imply that the officers acted unreasonably by failing to give Inga or Miguel a copy of the commitment and transport order, the Plaintiffs point to nothing indicating that the transporting officers had such a duty. Under the New Mexico statutes, if "a licensed physician or a certified psychologist has certified that the person, as a result of a mental disorder, presents a likelihood of serious harm to himself or others and that immediate detention is necessary to prevent

such harm [, s]uch certification shall constitute authority to transport the person" even absent a court

order.  N.M. Stat. Ann. § 43-1-10 (A), (B). If, as in the case at bar,

> an application is made to a court, the court's power to act in furtherance of an
> emergency admission shall be limited to ordering that:
> (1) the client be seen by a certified psychologist or psychiatrist prior to transport to
> an evaluation facility; and
> (2) a peace officer transport the person to an evaluation facility.

N.M. Stat. Ann. § 43-1-10 (B).

When the officer is ordered to transport the patient, the patient must "be taken immediately

to an evaluation facility."  N.M. Stat. Ann. § 43-1-10(D).

> The admitting physician or certified psychologist shall evaluate whether reasonable
> grounds exist to detain the proposed client for evaluation and treatment, and, if such
> reasonable grounds are found, the proposed client shall be detained.  If the admitting
> physician or certified psychologist determines that reasonable grounds do not exist
> to detain the client for evaluation and treatment, the client shall not be detained.

N.M. Stat. Ann. § 43-1-10(E).  Then,

> upon arrival at an evaluation facility, the proposed client shall be informed orally and
> in writing *by the evaluation facility* of the purpose and possible consequences of the
> proceedings, the allegations in the petition, his right to a hearing within seven days,
> his right to counsel and his right to communicate with an attorney and an
> independent mental health professional of his own choosing, and shall have the right
> to receive necessary and appropriate treatment.

N.M. Stat. Ann. § 43-1-10(F) (italics added).  There is no statutory duty for the transporting officer

to obtain a copy of the order and to give it to the patient before transport, and the Plaintiffs have

pointed to no Supreme Court or Tenth Circuit law imposing such a procedural-due-process duty on

the transporting officers.

The Court concludes that the officers are entitled to summary judgment on the basis of

qualified immunity on claims related to the various investigations, or lack thereof, and on claims

related to their obedience to the court order requiring them to transport Inga to the mental hospital

14

because nothing in the Plaintiffs' factual contentions or in the record indicates that the officers violated the Plaintiffs' constitutional rights while determining how to fulfill their duties or in carrying out their duties.  *See Reeves*, 484 F.3d at 1250. The Plaintiffs have failed to meet their burden to allege sufficient facts to establish a violation of a constitutional right.

> **B.      Section 1983 claims against Officer Davis.**

The only allegation in the second amended complaint regarding Officer Davis is that he "was openly hostile and aggressive towards the Plaintiffs and worked in unison with the neighbors and the Sheriff's Office to deny the Plaintiffs their rights guaranteed under the Constitutions of both the State and the United States." Doc. 168 ¶ 32.  Officer Davis submitted an affidavit stating that his only contact with the Plaintiffs "was on June 26, 2005, and was for no more than two (2) hours while defendant Davis was on-duty providing back-up support to the Otero County Sheriff's Office at its request" while the county officers investigated the incident with the bicyclists.  Doc. 256, Ex. A. He states that his sole involvement was to stand next to the Plaintiffs on the road outside of the gate of their residence to keep them separated from the bicyclists while the county officers interviewed the bicyclists and then to stand by the bicyclists to keep them separated from the Plaintiffs while the county officers interviewed the Plaintiffs.  *Id.* at 2-3.  He states that he never touched, restrained, arrested, or searched either Plaintiff and that he left before anyone was arrested.  *Id.* at 3.  The Plaintiffs have not rebutted this testimony.  The Court concludes, therefore, that Officer Davis is entitled to summary judgment on the issue of qualified immunity because there is no evidence that Officer Davis violated any of the Plaintiffs' constitutional rights.

> **C.      ADA and FHA claims against Sheriff Blansett and the Sheriff's Office.**

Title II of the ADA provides: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs,

or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §
12132.  Section 3617 of the FHA provides: "It shall be unlawful to coerce, intimidate, threaten, or
interfere with any person in the exercise or enjoyment of . . . any right granted or protected by
Section 3603, 3604, 3605, or 3606 of this title."  42 U.S.C. § 3617.  As mentioned in the Court's
Order issued June 8, 2007, "the only factual allegation in the Amended Complaint suggesting a
discriminatory animus is that Defendant John Blansett, the Sheriff of the Otero County Sheriff's
Office, issued a policy statement regarding treating Plaintiffs differently due to Miguel Gutierrez's
disability."  Doc. 127 at 10.  The Plaintiffs state that Miguel originally told the Sheriff's office that
he has PTSD and could not take harassment from his neighbors.

In support of their claim that the Sheriff's office did issue a policy statement to treat Miguel
differently because of his disability, the Plaintiffs refer to the medical records from the VA
demonstrating that Captain Sanchez met with the party who had called the VA on January 18, the
day after she expressed her fear of Miguel, and then Sanchez also called the VA and confirmed that
Miguel was threatening others and the situation was escalating.  These actions do not, however,
establish that Captain Sanchez discriminated against Miguel because of his disability by treating
him differently than any other veteran with PTSD whose behavior is perceived as threatening by
other citizens.  The officers had noted that Miguel was armed with deadly weapons, and he freely
admits that fact.  Sanchez did not discriminate against Miguel by discussing a potentially dangerous
situation with the VA medical personnel that had been disclosed to the Sheriff's office by both
Miguel and the neighbors.

Further, the second amended complaint shows that "[t]he Otero County Sheriff's Office
responded" to the Plaintiffs' complaints that Defendant Gordon's dogs were running loose and
endangering the Plaintiffs' small dog and that Gordon "was cited by a Community Services Officer

for animals at large," and prosecuted for that behavior.  Doc. 168 ¶ 54.  The second amended

complaint further alleges that the officers also "cited [Gordon] for filing a false police report," *id.*

¶ 63, regarding the Plaintiffs and that Gordon was prosecuted for that act, which indicates that the

Sheriff's Office was not treating Miguel differently or more unfavorably than other complainants

who were involved in the property disputes.  There is no evidence from which a factfinder could

reasonably infer that either the Sheriff's Office or Sheriff Blansett issued a policy to treat the

Plaintiffs differently due to Miguel's disability or that any officer acted on such a policy.  Summary

judgment must be granted in favor of the Defendants on any ADA and FHA claims.

     **D.**     **Claims against the Otero Board of County Commissioners**.

     Although the Plaintiffs listed the Board in several headings in the second amended

complaint, there are only three paragraph that discuss the Board's alleged bad acts:

> 34. Defendants Otero County Commissioners [are sued] in their official capacity for
> ignoring the violations in this area and allowing the Plaintiffs rights to be violated
> with full knowledge of the areas defects under the laws of the federal government
> and the state government.
>
> . . . .
>
> 49. On June 29, 2004, because of Schwander's and Gordon's constant conniving to
> force there [sic] way through the Plaintiff's [sic] property on the west, BLM officials
> and Otero County Commissioner Doug Moore arrived to assess the situation.  After
> a lengthy discussion it was obvious these people were unwilling to meet the needs
> of the Plaintiffs to ensure the safety of the Plaintiff's [sic] livestock, pets and the
> safety of the public.  They threatened RS2477 and eminent domain but neither would
> work as this property turns out to be an illegal subdivision.  In a letter dated
> September 7, 1990, the BLM clearly states that the illegally made trail coming to this
> subdivision is not RS2477 and the subdivision's use is permissive only.
> Commissioner Moore stated that the county had standards for roads, etc., which
> indicated he knew that this was an illegal subdivision. Negotiations ceased after
> more harassment by the neighbors.
>
> . . . .
>
> 138. Defendant Board of County Commissioners had a responsibility when the

> Commissioner knowingly ignored that Plaintiff's [sic] property was in an illegal subdivision and the imposition of subdivision controls is a classic exercise in state police power to preserve the health, welfare and general safety of the community, including the Plaintiffs.

Doc. 168 ¶¶ 34, 49, 138.

The Board is listed as a defendant in Count I for violation of § 1983, but the only allegations that appear to relate to the Board are found in the first sentence of the Count as follows:

> 149.  The defendants did on various occasions ignore enforcements that have not been properly enacted by the State of New Mexico.

Doc. 168 ¶ 149.

These allegations do not set forth facts sufficient to establish a Constitutional violation.  The Board of Commissioners, therefore, are entitled to qualified immunity against suit on the Plaintiffs' § 1983 claims.

**IT IS ORDERED** that the Otero County Defendants' Motion for Summary Judgment [Doc. 194] is GRANTED and all claims against these Defendants are dismissed with prejudice.

**IT IS FURTHER ORDERED** that Officer Davis's Motion for Summary Judgment [Doc. 255] is GRANTED and all claims against him are dismissed with prejudice.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**

18