IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MIGUEL and INGA GUTIERREZ,

    Plaintiffs,

vs.                                    No. CIV 06-0937 RB/WPL

THOMAS SCHWANDER, et al.

    Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING MOTIONS TO DISMISS
AND IMPOSING SANCTIONS**

This matter comes before the Court on Defendants Elizabeth A. Gordon's and John S. Gordon's Motion to Dismiss, filed January 30, 2008 (Doc. 247); on Defendants Thomas Schwander's and Kerrin Schwander's Motion to Dismiss, filed January 31, 2008 (Doc. 248); on Defendant Mark Bolinger's First Motion to Dismiss, filed March 27, 2008 (Doc. 335); and on Defendant Brian M. Nelson, Jr.'s Amended Motion to Dismiss, filed March 31, 2008 (Doc. 340). These Defendants all contend that Plaintiffs Miguel and Inga Gutierrez's complaint against them should be dismissed for their failure to comply with the Court's discovery orders and for failure to make sufficient initial disclosures under Fed. R. Civ. P. 26.[1]  The Court will also consider the Gordons' Motion to Strike, filed February 21, 2008 (Doc. 290).  The Court will deny the motions, but will impose sanctions to ameliorate the Plaintiffs' failures to make timely and adequate disclosures.

---

[1] Phillip Simpson and Joan Brumage also made similar motions in February and March 2008, *see* Docs. 275, 336, but because all claims against these two Defendants have already been dismissed, *see* Docs. 392, 393, their motions will be denied as moot.

## I. Factual and Procedural History.

The Court has previously issued four orders regarding the Plaintiffs' failures to make sufficient Rule 26 disclosures or to properly respond to discovery requests. *See* Docs. 190, 191, 221, 241. The Court has repeatedly instructed the Plaintiffs on their duties to comply with the Rules and has explained exactly what the Plaintiffs must provide to the Defendants. In its first order, issued in response to a motion to compel filed by former Defendant Paige Viscarra, the Court explained that, because both "Plaintiffs have clearly placed their physical and mental condition at issue," the Plaintiffs had to "provide supplemental initial disclosures by December 10, 2007," and set out exactly what information those disclosures contained. Doc. 191 at 1-2. The Court warned the Plaintiffs that failure to comply with the rules would result in sanctions. *See id.* But the Plaintiffs did not provide all of that information to the Defendants. Instead, as the Court noted in its second order compelling discovery issued January 9, 2008, in response to a motion to compel filed by the Gordons, they "[s]imply provid[ed] HIPAA releases that identify a few medical facilities that have treated Miguel Gutierrez[, which] falls far short of Plaintiffs' meeting their obligations under Rule 26 and D.N.M.LR-Civ. 26.3(d)." Doc. 221 at 2. The Court ordered the Plaintiffs to provide a computation of damages as part of their initial disclosures. The Court's order required compliance by January 18, 2008, awarded attorney fees to the Gordons as a sanction, and warned the Plaintiffs that failure to comply would result in further sanctions, which could include dismissal of their case. *See id.* at 2-3.

On January 10, 2008, the Plaintiffs provided Viscarra's counsel "with a large box containing almost 1900 pages of bills and medical records from various medical treatment providers." Doc. 242 at 6. The records did not identify which bills or records were responsive to interrogatories or requests for production or which ones supported their alleged damages. *See id.* But the Plaintiffs

2

also produced "additional HIPAA releases, a letter to Las Vegas Medical Center, a letter to CHAMPVA, tax record release forms, limited documents related to their foreclosure action and copies of the medical records at issue" relevant to the Defendant's request for production. *See id.* at 9. On January 25, 2008, the Plaintiffs served a twelve-page, supplemental joint "Answers to Interrogatories" as a "response to the complaint and with specificity towards all the defendants." *See id.*, Ex. G. The document set forth a detailed time line of events that the Gutierrezes contend establish various violations of law and listed some additional witnesses and exhibits, although it did not provide witness addresses, and the only exhibits attached to the document were some hospital records. *See id.* Ex. H.

The Court was not apprised of the January 10 and January 25 disclosures before it issued its third, January 28, 2008, Order. Concluding that the Plaintiffs had failed to supply all of the requisite information to Viscarra, the Court compelled the Plaintiffs to supplement their answers to interrogatories and requests for production, instructing them that their statement that information concerning the amount of damages they were claiming was still unavailable was unacceptable. Doc. 241 at 2. The Court held that the Plaintiffs

> (1) frivolously asserted attorney-client and work product privilege to numerous discovery requests, . . .; (2) failed to provide basic background information; (3) failed to provide information about their treating doctors, despite placing their physical and mental condition in issue; and (4) failed to produce tax records and other earning information, despite having submitted claims for lost income. They have also obstructed the discovery process in numerous other ways . . . .

*Id.* at 7. For the third time, the Court warned them that "failure to comply with their discovery obligations will subject them to further sanctions, which could include dismissal of their case," and cited *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992). *See id.*

On January 30, 2008, the Plaintiffs filed a Notice disclosing a potential expert witness, Guy

3

McCommon, Miguel's treating counselor at the Las Cruces Vet Center, who will testify about how the "aggravation caused by the defendants [affected] the Plaintiff Miguel [sic] existing disability." *See* Doc. 246 at 1.  That same day, the Gordons filed their motion to dismiss for failure to comply with the Court's January 9, 2008 Order compelling disclosure.  *See* Doc. 247.  The Gordons admit that they have received medical and tax- return releases from both Miguel and Inga, a release of social security, medical, and income information from Miguel, a lengthy chronological presentation of the Gutierrezes' case (although they contend it is "incoherent"), and certain documents and discovery materials that were produced to the Schwanders, but contend that the Plaintiffs still have not produced medical records in their possession or supplied a list of dates and the nature of their medical treatment and have failed to supply the computation of each category of damages along with the supporting documents.

The Plaintiffs responded a day later, contending that they have fully complied with the Court's order and attached a list of treating medical facilities, a copy of their August 2007 disclosures, and a letter from Viscarra's counsel noting receipt of medical records from five different treating physicians or facilities on January 28, 2008.  *See* Doc. 250.  They also refer to the box of medical bills and records and other documents delivered to Defendant Viscarra for copying by all Defendants earlier in January.  The Plaintiffs contend that they did not compute their damages because their original bills were in the box given to Defendants' counsel to copy.

In response to the subsequent motions to dismiss filed by the Schwanders and Simpson, on February 19, 2008, the Plaintiffs stated that they found out on February 12, 2008

> that the individual treating facilities would not release billings on a single HIPAA release but require separate HIPAA releases to a different section in each facility. To this date only two facilities have sent in billing information and more will be obtained. The Plaintiffs cannot be held accountable for a flaw in the HIPAA releases that are provided by the court. The sole insurance provider for the Plaintiff Inga has

not responded to any requests for an itemized listing of her billings.

Doc. 277 at 1-2. In regard to computation of damages, the Plaintiffs state that,

> the totals that have been received equal the sum of $134,718.38 with two hospitals' billing supposedly being mailed. There are also individual doctors that must be contacted and their billings obtained. The HIPAA releases should have included a provision for this information along with the records, but did not. All insurance documents and receipts in the Plaintiffs' possession have already been released to all counsel that wanted them. The bills in question from Gerald Champion Hospital, based on the information released thus far, total $18,008.71. None of this reflects any of the Plaintiffs' costs for transportation and other out of pocket expenses. The medical costs are only a part of this suit as other losses may or may not happen, including the foreclosure and loss of llamas and camels, etc. . . . Currently, the losses for the home itself will be in the vicinity of $250,000 if the foreclosure goes through.

*Id.* at 3. The Plaintiffs attached to this response some medical records, pictures, and a copy of a criminal docket sheet for Margaret Caitlin, and stated that a supplemented witness list would be forthcoming. The Gordons seek to strike this response, contending that it is untimely and that it also is a surreply for which the Plaintiffs have not received permission to file. *See* Doc. 290.

On February 25, 2008, the Plaintiffs filed a supplemental witness and exhibit list that listed 20 witnesses, most of whom are identified for the first time. *See* Doc. 297. The Plaintiffs did not provide contact information for many of the witnesses. In their supplemental witness list, the Plaintiffs state that McCommon "has been treating the Plaintiff [Miguel] since almost the beginning of the incidents in the neighborhood." *Id.* at 1. The February 25 supplement also references many exhibits that are not attached to the document, but apparently most of those exhibits have been disclosed to the Defendants, except for videotapes. The Plaintiffs state that, "[c]urrently the medical costs with the sole insurance provider being CHAMPVA are in excess of $247,000," but they do not set out what incidents or services are related to those costs.

In their second amended complaint, the Plaintiffs set forth the following requests for damages: $115,000 for the loss of their livestock business, including camels and llamas; medical

5

expenses for Inga in the amount of at least $150,000 for injuries she allegedly suffered in her interactions with Bolinger, Nelson, and the Gordons, and $5,000,000 for Inga's pain and suffering arising from those incidents; $1,000,000 for damages for the injuries Inga suffered when Thomas Schwander allegedly struck her foot while driving away from blading the Gordon Road; an unspecified amount of damages for emotional and mental pain and suffering, litigation costs, and loss of reputation; and punitive damages in the amount of $25,000,000.  *See* Doc.168 at 75-77.

The discovery deadline was March 13, 2008.  *See* Doc. 150 at 1.  The Court recently vacated the pending pretrial deadlines and will reset them after the Court has ruled on the many pending motions.  *See* Doc. 391.  This case is set for trial in October 2008.

## II.     Legal Standards.

The Federal Rules of Civil Procedure authorize a district court to sanction a party who "fails to obey an order to provide or permit discovery. . . ." by imposing several kinds of sanctions, including "dismissing the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(v). The Court should consider the full record in determining whether to dismiss a complaint for failure to comply with discovery orders.  *See Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642 (1976).

The Court's discretion in deciding a proper sanction

> "is limited in that the chosen sanction must be both just and related to the particular claim which was at issue in the order to provide discovery." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992) (internal quotation marks omitted).  Dismissal with prejudice "represents an extreme sanction," *id.*, and thus is considered appropriate only in cases involving "willfulness, bad faith, or [some] fault" on the part of the party to be sanctioned.  *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1044 (10th Cir. 2005) (internal quotation marks omitted).  "In many cases, a lesser sanction will deter the errant party from further misconduct." *Ehrenhaus*, 965 F.2d at 920. "Because dismissal with prejudice defeats altogether a litigant's right of access to the courts, it should be used as a weapon of last, rather than first, resort." *Id.* (internal quotation marks omitted).

> "Before imposing dismissal as a sanction, a district court should ordinarily evaluate the following factors on the record:  '(1) the degree of actual prejudice to the [other party]; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.'" *Gripe v. City of Enid*, 312 F.3d 1184, 1187 (10th Cir. 2002) (quoting *Ehrenhaus*, 965 F.2d at 921).  "This list," hereinafter referred to as the *Ehrenhaus* factors, "is not exhaustive, nor are the factors necessarily" of equal weight.  *Chavez*, 402 F.3d at 1044. "Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction." *Ehrenhaus*, 965 F.2d at 921 (internal quotation marks omitted).

*Procter & Gamble Co. v. Haugen*, 427 F.3d 727, 738 (10th Cir. 2005).

Fed. R. Civ. P. 26(a)(1)(A)(iii) requires a plaintiff to provide "a computation of each category of damages" and make available for inspection and copying "documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered" at the time of exchange of initial disclosures.  The Plaintiff must also provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subject of that information – that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i).  The Court has discretion in sanctioning a party for failure to make the disclosures required under Rule 26.

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions, including any of the orders listed in

Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c).  "The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court."  *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (quotation marks omitted).

> A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose.  Nevertheless, the following factors should guide its discretion: (1) the prejudice or surprise to the party against whom the testimony [or evidence] is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony [or evidence] would disrupt the trial; and (4) the moving party's bad faith or willfulness.

*Id.* (citation omitted).

### III. Analysis.

#### A. The Gordons' Motion to Strike.

The Gordons seek to strike the Plaintiffs' "Final Response to the Defendants Schwanders', Simpson, and Gordons' Motions to Dismiss," which they filed on February 19, 2008.  The Gordons contend that it is untimely and that it also is a surreply for which the Plaintiffs have not received permission to file.  *See* Doc. 290.  The Court notes, however, that this filing is timely in response to the Schwanders' Motion to Dismiss, which was filed on January 31, and to Simpson's Second Motion to Dismiss, which was filed on February 4, on the same grounds.  The Court will not strike the response.

#### B. Sanctions for failing to timely make Rule 26 witness disclosures.

Upon close review of the whole record, the Court concludes that the Plaintiffs have made sufficient Rule 26 disclosures, except in two regards:  they did not timely identify certain witnesses of whom they were aware at the time of the filing of their complaint and when their disclosures were due, and they have not provided a computation of damages or supplied supporting documents for

8

their claims for alleged business losses. A review of the anticipated testimony for almost all of the witnesses on the Plaintiffs' supplemental witness list demonstrates that the Plaintiffs were fully aware of their existence and knowledge at the time their Rule 26 disclosures were due. The Court notes that the Plaintiffs identified Jeff Adams, Doug Moore, Lori Gibson, Linda Filosa, Seth and Margaret Catlin, and Elaine Bawden in their second amended complaint and disclosed in detail their involvement and knowledge in this case. *See* Doc. 168 at ¶¶ 43, 49, 54, 61, 66, 69, 74, 81. The Plaintiffs identified Guy McCommon as an expert witness on January 30, 2008, although they stated that he had been involved in treating Miguel "since almost the beginning of the incidents in the neighborhood," Doc. 297 at 1, and even though their deadline for identifying experts was December 10, 2007, *see* Doc. 150 at 2. The Plaintiffs provide no justification for failing to identify the remaining witnesses before February 25, 2008, even after having been twice instructed by the Court to make the Rule 26 disclosures by December 10, 2007 and January 18, 2008. *See* Docs. 191, 221. The Court finds that their decision not to disclose the identity of McCommon, Angel Mayes, Tim Sanders, Jim McCormick, Oz Gomez, Erik Chase, Bob Freeman, Roy Baker, Cheryl Matherly, Mark Gray, Diana Gray, Ruben Martinez, Todd Harrison, Klad Zimmerle, and Laura Berg in the Rule 26 disclosures was wilful and unjustified.

The Court finds that the Defendants were unfairly prejudiced by the first identification of these witnesses, except for McCommon, only thirteen business days before the discovery deadline ended. This late identification did not give the Defendants enough time to cure the unfair prejudice. Although the Court finds that the Defendants had sufficient time to interview or depose McCommon before the discovery deadline, the Plaintiffs' blatant and wilful refusal to identify him as a healthcare provider within the deadline set in the pretrial order or within the two extended deadlines the Court gave them will not be tolerated. Accordingly, the Court concludes that the Plaintiffs may not call

9

as witnesses or use the testimony of Guy McCommon, Angel Mayes, Tim Sanders, Jim McCormick, Oz Gomez, Erik Chase, Bob Freeman, Roy Baker, Cheryl Matherly, Mark Gray, Diana Gray, Ruben Martinez, Todd Harrison, Klad Zimmerle, and Laura Berg at trial.  *See* Rule 37(b)(2)(ii); 37(c).

### C. Sanctions for failing to timely make Rule 26 computation disclosures.

As noted, *supra,* the Court has twice ordered the Plaintiffs to make initial disclosures regarding the computation of each category of their damages and to provide the documents or other evidence on which they rely to establish those damages.  *See* Doc. 221 at 2; Doc. 241 at 3.  It appears that the Plaintiffs' claims for medical costs have been estimated since the filing of the complaint and that copies of their medical bills have either been given to the Defendants or the Plaintiffs have given the Defendants releases so that they may obtain those bills.  But there is no indication that the Plaintiffs ever attempted, before the discovery deadline, to supply the documents or evidence supporting their claim of $115,000 for business or income losses associated with the camels and llamas, as required by Rule 26(a)(1)(A)(iii).  The Court finds that their wilful failure to make these initial disclosures or to provide documentary support for their claims is unjustified and not harmless; that the Defendants have been unfairly prejudiced by their failure to make these disclosures, and that to again order the Plaintiffs to comply is unlikely to result in compliance.  The Court concludes that, as a sanction for failing to make the initial disclosures or obey the Court's discovery orders, the Plaintiffs may not claim business losses related to the loss of their camels and llamas or produce testimony regarding those alleged losses at trial.

### D. Dismissal of the Plaintiff's suit is not an appropriate sanction.

Although the Plaintiffs have failed to fulfil some of their duties to disclose, a review of the whole record indicates that they have made sufficient disclosures to avoid the harsh sanction of dismissal of their case.  The Plaintiffs' claims and their version of the events -- and, indeed, their

10

whole case -- have been detailed in their complaint, in the chronology of events submitted to the Defendants, and in their responses to the Defendants' multiple motions to dismiss and for summary judgment. Contrary to the Gordons' suggestion, the Plaintiffs' contentions are neither vague nor incoherent. The Defendants have obtained access to the Plaintiffs' medical, tax, and social security records, and the other civil and criminal proceedings involving the Plaintiffs, and they are unlikely to be surprised at trial by anything new.

An analysis under *Ehrenhaus* indicates that the Court should not dismiss the case as a sanction for failure to fully comply with disclosure duties and discovery orders. Because the Court has ruled that the Plaintiffs may not present previously-unidentified witnesses and has foreclosed claims for damages associated with business losses, the Defendants will not suffer any actual prejudice by allowing the trial to go forward. Because they have complied, for the most part, with the Court's discovery orders, the Plaintiffs have not unduly interfered with the judicial process nor are they grossly culpable. Finally, the Court finds that barring the previously-unidentified witnesses and unsupported claims and barring the Plaintiffs from producing any document or exhibit at trial that has not been previously produced to the Defendants are sufficient and just sanctions. In summary, the Court concludes that the Plaintiffs' failures in this case do not "outweigh the judicial system's strong predisposition to resolve cases on their merits." *Ehrenhaus*, 965 F.2d at 921 (internal quotation marks omitted).

**IT IS ORDERED** that the Gordons' Motion to Dismiss [Doc. 247] is Denied; the Schwanders' Motion to Dismiss [Doc. 248] is Denied; the Gordons' Motion to Strike [Doc. 290] is Denied; Bolinger's First Motion to Dismiss [Doc. 335] is Denied; and Nelson's Amended Motion to Dismiss [Doc. 340] is Denied;

**IT IS FURTHER ORDERED** that Simpson's Second Motion to Dismiss [Doc. 275] and

Brumage's Motion to Dismiss [Doc. 336] are Denied as Moot;

**IT IS FURTHER ORDERED** that Miguel and Inga Gutierrez may not introduce the testimony of Guy McCommon, Angel Mayes, Tim Sanders, Jim McCormick, Oz Gomez, Erik Chase, Bob Freeman, Roy Baker, Cheryl Matherly, Mark Gray, Diana Gray, Ruben Martinez, Todd Harrison, Klad Zimmerle, or Laura Berg at trial; that they may not introduce any exhibits, including videotapes, trial tapes, emails, or documents of any type in support of their claims that were not produced to the Defendants, or otherwise in the Defendants' possession, by February 26, 2008, and that they may not claim damages for business losses at trial.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**