IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MIGUEL and INGA GUTIERREZ,

      Plaintiffs,

vs.                                    No. CIV 06-0937 RB/WPL

THOMAS SCHWANDER, et al.

          Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants Elizabeth A. Gordon's and John S. Gordon's First Motion for Summary Judgment, filed April 8, 2008 (Doc. 349). The Gordons contend that they are entitled to summary judgment on all of Plaintiffs Miguel and Inga Gutierrez's claims against them on their conclusory statement that the claims all arise out of the Gordons' alleged trespass on an easement the Court calls "the Gordon Road." As stated in the Court's Memorandum Opinion and Order issued July 7, 2008 (Doc. 393), all claims for trespass based on use of the Gordon Road, which would include use by the Gordons, are precluded by the doctrine of claim preclusion. *See* July 7 Order at 13-16. But that does not mean that the Gordons have established entitlement to judgment on all other claims against them.

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for

its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting Fed.R.Civ.P. 56(c)). As the Supreme Court explained  almost forty years ago in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160-61 (1970), the burden on the non-moving party to respond arises only if the summary judgment motion is properly supported as required by Rule 56(c).  Thus, summary judgment is "appropriate" under Rule 56(e) only when the moving party has met its initial burden of production under Rule 56(c).  If the moving party's evidence produced in support of the summary judgment motion does not meet this burden, "summary judgment must be denied *even if no opposing evidentiary matter is presented*.  *Id.* at 160 (italics in original) (quotation marks omitted); *see Reed v. Nellcor Puritan Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002) (holding that a district court may not grant a motion for summary judgment "without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law.  If it has not, summary judgment is not appropriate, for no defense to an insufficient showing is required.") (quotation marks and bracket omitted).

Where, as here, the moving party  does not have the ultimate burden of persuasion at trial on an issue, it still has "both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002).  "In our circuit, the moving party carries the burden of showing beyond a reasonable doubt that it is entitled to summary judgment." *Id.* (internal quotation marks omitted).  "The moving party may carry its initial burden by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing

2

that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."
*Id.*  But if the moving party contends that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial, it must make more than conclusory assertions to that effect. "[C]onclusory assertions to aver the absence of evidence remain insufficient to meet this burden. Otherwise, as Justice Brennan cautioned, summary judgment '[would] be converted into a tool for harassment.' *Celotex*, 106 S.Ct. at 2554 (Brennan, J. dissenting)." *Windon Third Oil & Gas Drilling P'ship v. FDIC*, 805 F.2d 342, 346 n. 7 (10th Cir. 1986).  "In other words, the moving party must affirmatively demonstrate that there is no evidence in the record to support judgment for the non-moving party." *Eaves v. Fireman's Fund Ins. Cos.*, No. 04-6156, 148 Fed. Appx. 696, 700, 2005 WL 2146058, **3 (10th Cir. Sept. 7, 2005) (unpublished disposition cited for persuasive value only pursuant to FED. R. APP. P. 32.1 and 10th Cir. Rule 32.1).

Under our local rules, the moving party must set forth in the memorandum supporting the motion for summary judgment "a concise statement of all of the material facts as to which movant contends no genuine issue exists.  The facts must be numbered and must refer with particularity to those portions of the record upon which movant relies."  D.N.M.LR-Civ. 56.1(b).

If a moving party fails to carry its initial burden of production by failing to set forth the concise, numbered statement of undisputed material facts, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial.  *See Trainor*, 318 F.3d at 979.  In deciding the Gordons' motion for summary judgment, the Court views the evidence, and draws all reasonable inferences from the evidence, in the light most favorable to the Plaintiffs.  *See Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).

The Gordons' first "undisputed" fact is that "Plaintiffs allege various claims against John and

3

Elizabeth Gordon arising in large part from alleged trespass on land adjoining Plaintiffs' property or for testimony provided in court proceedings." Doc. 349 at 2. This statement is at odds with the facts alleged in the complaint and with the record, however. For example, the Plaintiffs allege trespass on their own land, not on land adjoining their property. And the Gordon's submissions show that the Gordons were granted only an access easement across the Plaintiffs' property. Further, the unrebutted allegations in the second amended complaint show that Plaintiffs' claims for intentional infliction of emotional distress, assault and battery, slander, malicious abuse of process, and invasion of privacy/harassment/intimidation against the Gordons do not arise from, and are not contingent upon, a finding that the Gordons were trespassing on the Gordon Road.

Further, some of the Plaintiffs' claims for trespass appear to arise from trespasses not occurring on the Gordon Road. The second amended complaint makes the following allegations regarding trespass that demonstrate that only some, but not all, allegations of trespass may be related to the Gordon Road:

> During the month of July, there were many incidents of trespassing, photographing and physical invasions. On July 11, 2004 . . . the Plaintiffs saw the Gordons running off the Plaintiffs' property with a camera, binoculars and other unidentifiable items. Mr. Gordon confronted Plaintiff Miguel a little later this day on the Plaintiffs' property. Mr. Gordon parked his car in front of the Plaintiffs' first gate, about 95 feet inside Plaintiffs' property Second Amended Complaint (Doc. 168) at ¶ 52.

> Throughout the next three months, there were numerous attempts to provoke the Plaintiffs by the Gordons and neighbors by walking on the front of the Plaintiffs' property with weapons in a threatening manner, stopping, staring, photographing and anything else they could think of including using Mrs. Gordon's workers to participate in the harassment. On October 29, 2004, the Gordon's hired help, Brenda and Logan Rogers, dumped Gordon's trash on Plaintiffs' property. *Id.* at ¶ 56.

> On January 25, 26, and 27, 2005, Mrs. Gordon parked on the Plaintiffs' property, taking photos of them and their house and animals. *Id.* at ¶ 65.

> On February 13, 2005, Mr. Gordon stopped his vehicle on Plaintiffs' property while his wife got out and walked across the Plaintiffs' property taking pictures. Miguel told Mr. Gordon to "move along," but he just grinned. After Mrs. Gordon walked

down the entire front of Plaintiffs' property she got back in their car.  *Id.* at ¶ 70.

On February 25, 2005, Mrs. Gordon sought the aid of her part time helpers, Seth and Margaret Catlin, to trespass on Plaintiffs' property and take photos again.  Inga told them to leave and they ignored her.  *Id.* at ¶ 74.

On March 2, 2005, Mrs. Gordon, along with the Schwanders and an unknown man driving their vehicle, trespassed in a flagrant parade, on foot, taking pictures yet again on Plaintiffs' property and of the Plaintiffs.  *Id.* at ¶ 75.

On April 6, 2005, Mrs. Gordon was parked on Plaintiffs' property, taking photos. *Id.* at ¶ 76.

On May 18, 2005, Mrs. Gordon came back on Plaintiffs' property with Thomas Schwander, heavily armed, taking more pictures of the same property.  *Id.* at ¶ 82.

On May 21, 2005, Gordon and Schwander came back on Plaintiffs' property again, heavily armed. . . .  Plaintiffs told them to get off their property, but they didn't.  *Id.* at ¶ 83.

On May 23, 2005, Gordon and Schwander again arrived to survey and measure Plaintiffs' property but this time with two deputies. *Id.* at ¶ 85.

On October 17, 2005, Mrs. Gordon was observed taking photos of the east side of Plaintiffs' property.  When spotted, she continued all the way down the side, across front of Plaintiffs' property and back, stopping, taking photos of the land from every angle she could get and of Plaintiffs.  *Id.* at ¶ 95.

On September 2, 2006, the Gordon's arranged to have the front of Plaintiffs' property altered severely.  Mr. Gordon had told the contractor to take rocks and dirt from the Plaintiffs' arroyo to do it.  *Id.* at ¶ 95.

By September 3, 2006, the altered land caused all Gordon's runoff to undermine one side of Plaintiffs' fencing, allowing their dogs to get out and erosion of a bank. Plaintiffs were forced to work for days repairing this damage.  *Id.* at ¶ 119.

The Gordons addressed none of these allegations in their summary-judgment memorandum.

The remaining eight "undisputed facts" set forth by the Gordons all relate solely to the judgment in

the state-court case in which the state court ruled that the Gordons are entitled to a permanent

prescriptive easement over the Plaintiffs' property.  *See* Doc. 349 at 2-3.  Otherwise, the Gordons

do not controvert any allegations in the Plaintiffs complaint related to the other claims, nor do they

set forth a numbered list of any undisputed facts regarding the Plaintiffs' claims for assault and battery, invasion of privacy/harassment/intimidation, intentional infliction of emotional distress/outrage, slander, or malicious abuse of process.  They have, therefore, failed to meet their initial burden under rule 56(c), case law, and our local rules to demonstrate that no material issues of fact remain for trial on these claims such that they should be granted judgment as a matter of law. *See S.H. Kress*, 398 U.S. at 160; *Trainor*, 318 F.3d at 979.

Instead of setting out numbered, undisputed facts regarding claims other than trespass  in their summary-judgment brief, the Gordons make conclusory statements unsupported by affidavits or other evidence, as follows: (i) Plaintiffs' "claim of assault and battery against Defendants fails as it is unsupported by any evidence;" (ii) Plaintiffs' "perjury and false statement claim is based on statements in a court proceeding and Defendants are entitled to absolute immunity;" (iii) Plaintiffs' claims for "intentional infliction of emotional distress and outrage are based on Defendants walking and driving across the easement, lawfully carrying cameras and taking pictures" and are, therefore, insufficiently outrageous to state a claim; (iv) the Plaintiffs' "rambling allegations" that the Gordons allowed their dogs to attack the Plaintiffs' dogs are not true; and (v) taking photographs on public property does not "constitute an invasion of 'private' space or solitude" as a matter of law.  But these contentions do not take into account the allegations in the Plaintiffs' complaint, are not properly asserted or supported in the summary-judgment motion and record, and do not satisfy the Gordons' duty to establish that no genuine issues of material fact exist regarding the Plaintiffs' claims.  *See Reed*, 312 F.3d at 1195 (holding that, a "court should accept as true all [uncontroverted] material facts <u>asserted and properly supported</u> in the summary judgment motion.  But only if those facts entitle the moving party to judgment as a matter of law should the court grant summary judgment.")

For example, regarding the Plaintiffs' assault and battery claims, the second amended complaint states that, "[o]n May 22, 2005 . . . the Gordons . . .  harassed the Plaintiffs by measuring and taking photos . . . .They were told to leave the Plaintiffs' property and Mrs. Gordon elbowed Miguel in the chest, who had gone to the side of the fence the trespassers were on."  Doc. 168 at ¶ 84.  The Gordons do not controvert this allegation by affidavit (and even if they did, the Court would be obliged to view the evidence in a light most favorable to the Plaintiffs), and they do not establish entitlement to summary judgment on this claim by merely asserting in a conclusory fashion that the Plaintiffs' claims for assault and battery are "unsupported by any evidence." Doc. 349 at 1.  *See Windon Third Oil & Gas Drilling P'ship*, 805 F.2d at 346  n. 7.

The complaint further alleges that, in

> May or June of 2004, while fencing in the back, Mrs. Gordon's loose pack of open field coursers attacked the Plaintiffs through their new fence while they were working on it, pushing it open.  Plaintiffs had a mini dachshund with them.  Mrs. Gordon had been watching from behind the bushes.  Plaintiffs had to throw their dog in their truck to keep Gordon's dogs off him.  After the dogs ran off, Mrs. Gordon literally jumped up from behind a bush with a telephoto lens in the Plaintiffs face, taking pictures.  She was laughing like a mental patient.

Doc. 168 at ¶ 47.

> On July 15, 2004 Deputy Breitbach of the Otero County Sheriffs Office was dispatched to the plaintiffs as Mrs. Gordon had her dogs loose and threatening the Plaintiffs yet again while they were in the back fencing, putting up a gate.  Deputy Breitbach clearly saw the mayhem of a fury of dog prints and the sawdust from the gate hinge holes.  The dogs had gone after the Plaintiff' toy poodle who had to be thrown in the truck to save him from Gordon's loose trained pack

Doc. 168 at ¶ 53.

> On August 30, 2004 the Plaintiffs were going to take their new dog, leashed, for a walk on the public land behind their property when Mrs. Gordon's dogs attacked at the back gate belonging to the Plaintiffs.  Mrs. Gordon would not call her dogs off and continued to let them threaten and stick their heads through the gate trying to attack.  Clear pictures of this incident were taken.  The Otero County Sheriffs Office responded and she was cited by a Community Services Officer for animals at large.

Doc. 168 at ¶ 54.  These allegations state claims for assault upon the Plaintiffs and their property (and may also support a claim for invasion of privacy/intrusion/harassment) that are not defeated on summary judgment by the conclusory statement that there is no evidence.

Plaintiffs make claims for "harassment and intimidation," which the Court construes as an action for invasion of privacy in the nature of one for intrusion, based on their contention that the Gordons "have participated in a campaign to isolate, slander, demean, threaten and drive the Plaintiffs out of their choice of place in which to reside."  Doc. 168 at ¶ 250.  Regarding the harassment/intimidation/invasion-of-privacy/intrusion claims, the second amended complaint further states, *inter alia*:

> On May 25th and May 27th of 2004 Mrs. Gordon continued her harassment by stopping on our property repeatedly, taking photos and even peering into the house from the east side of the Gutierrez property, sometimes alone and sometimes with others.  The picture taking started earlier but the time is unknown but was a regular occurrence. At some point Plaintiffs had to cover every window or opening to avoid this pervasive invasion inside their home.

Doc. 168 at ¶ 45.

> On September 2, 2004 Mrs. Gordon stopped her car for two minutes staring into the house from the front of our property seemingly attempting to provoke a reaction and annoy us and our dogs.  She then drove home and came back out of her house to the Plaintiffs property line and continued staring again seemingly to try and provoke a response.

Doc. 168 at ¶ 55.  The Plaintiffs additionally contend that, "[o]n December 25, 2004 Mrs. Gordon appeared at the east side of the Plaintiffs property boundary, standing in an apparent drunken state trying to provoke an incident while staring in the Plaintiff's house."  Doc. 168 at ¶ 59.

> On April 3, 2006 Mrs. Gordon had her guests taking photos of the Plaintiff's property and even towards the inside of the house. Photos were taken of Mrs. Gordon photographing the house and Plaintiff Miguel while her guests viewed him with binoculars.  Just a few days prior to this, two other guests of the Gordons were walking along the common boundary and the male guest had a large stick and shoved it through the fence knocking down the hot wire inside the Plaintiff's property.  The

hot wire was put there to keep Gordon's pack of dogs from biting Plaintiffs dogs as they had 3 times prior to the wire going up.

Doc. 168 at ¶ 105.  As discussed below, the Plaintiffs also contend that the Gordons made false reports to both the sheriffs department and the VA in an attempt to harass and drive them out of the area.  Thus the Plaintiffs have stated more allegations than just that the Gordons took pictures while on public property[1], and the Gordons have addressed none of them.  The Plaintiffs contend that the Gordons continuously photographed them while Plaintiffs were on their private property and even looked in their windows until they were forced to cover them.  These allegations state a claim for invasion of privacy in the form of intrusion, *see Moore v. Sun Pub. Corp*., 881 P.2d 735, 743 (N.M. Ct. App. 1994); *McNutt v. N.M. State Tribune Co*., 538 P.2d 804, 807 (N.M. Ct. App. 1975) (characterizing the general tort of invasion of the right of privacy as "the right to be let alone"); *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1217 (10th Cir. 2007) (applying New Mexico law and noting that when conduct is "repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, [and] becomes a substantial burden to his existence, that his privacy is invaded").  The Gordons cannot defeat those claims on summary judgment by citing a principle of law that applies to factually distinguishable circumstances.

Instead of setting out all the allegations in the complaint regarding intentional infliction of emotional distress and outrage, the Gordons refer to four paragraphs of the complaint by number only and contend that Plaintiffs' claims are based on "Defendants walking and driving across the easement, lawfully carrying cameras and taking pictures," and on allegations that the Gordons' dogs attacked Plaintiffs' dogs.  Doc. 349 at 4.  They then contend that the Plaintiffs cannot produce any

---

[1]  The Court notes that even if the Gordons were entitled to use the Gordon Road, which is on the Plaintiffs' property, as an easement to access their property and BLM land, that does not mean that they had a legal right to also use that road to get closer to the Plaintiffs' property and house so that they could photograph them engaging in private activities.  "In New Mexico, the scope of an easement, or right-of-way, is narrow and is measured by the nature and purpose of the easement."  *Walker v. United States*, 162 P.3d 882, 894 (N.M. 2007).

9

evidence to show that the Gordons' dogs entered the Plaintiffs' property or attacked the plaintiffs' dogs and that, as a matter of law, "mere provocation," assault, battery, screaming, or public insults "do not rise to the level of outrageous conduct."   Doc. 349 at 5-6.   Again, however, the Plaintiffs alleged more conduct than the Gordons acknowledge in the summary-judgment motion.   For example, Plaintiffs contend that Mrs. Gordon verbally attacked the Plaintiffs,

> raving and spewing perverted misinformation she had illegally obtained from a local veterinarian's office that the Plaintiffs had let their dog die, that they refused to pay the bill or treat the dog.  The Plaintiffs spent over $500 trying to save the dog Gordon was referring to but she had been misdiagnosed and by the time the Plaintiffs realized the veterinarian didn't know what he was talking about, the dog died on the way to a qualified hospital.  Gordon spewed the dog's name and was clearly trying to inflict emotional pain on the Plaintiffs with her lies.  She continued raving for another minute or so.

Doc. 168 at ¶ 47.

Plaintiffs further contend that, in July 2004, "Mr. Gordon parked his car in front of the Plaintiff's first gate, about 95 feet inside Plaintiff's property.  Gordon got out of his vehicle and started ranting and raving, referring to Plaintiff Miguel as a welfare recipient, yelling that he was taking photos and video to prove Mr. Gutierrez was not disabled."  Doc. 168 at ¶ 52.  "Whether a defendant's conduct may reasonably be regarded as to be so extreme and outrageous as to permit recovery [for the tort of intentional infliction of emotional distress] must be determined on a case-by-case basis."  *Hakkila v. Hakkila*, 812 P.2d 1320, 1330 (N. M. Ct. App. 1991).  The elements of a claim for intentional infliction of emotional distress are:  "(1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's mental distress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the claimant's mental distress."  *Baldonado v. El Paso Natural Gas Co.*, 176 P.3d 277, (N.M. 2007) (internal quotation marks omitted).  The New Mexico uniform jury instructions define "extreme and outrageous conduct" as that conduct "which

goes beyond bounds of common decency and is atrocious and intolerable to the ordinary person." *Trujillo v. Northern Rio Arriba Elec. Co-op, Inc.*, 41 P.3d 333, 342-43 (N.M. 2001). "As a threshold matter, the trial court should determine as a matter of law whether the conduct at issue reasonably may be regarded as so extreme and outrageous that it will permit recovery under the tort of intentional infliction of emotional distress. When reasonable persons may differ on that question, it is for the jury to decide, subject to the oversight of the court." *Id.* at 343 (internal quotation marks and citation omitted).

It may not constitute the tort of intentional infliction of emotional distress as a matter of law for a husband going through a bitter divorce to scream insults at his wife, *see Hakkila*, 812 P.2d at 1330 (holding that "the continued verbal outbursts and insults of the husband, directed to wife, although patently providing grounds for dissolution of the marriage, did not reach the threshold requirement" of demonstrating outrageous conduct). But reasonable minds may differ regarding whether screaming at neighbors and accusing them of killing their own recently-deceased dog, not paying their vet bills, and defrauding the government, or allowing a pack of large dogs to run loose and attack small dogs goes beyond the bounds of common decency and is atrocious and intolerable to an ordinary person. The Gordons did not meet their initial burden to establish either prong of entitlement to summary judgment on the infliction-of-emotional distress/outrage claim.

Again without setting forth the allegations in the complaint describing the Gordons' alleged false statements regarding the Plaintiffs, the Gordons contend that the "Plaintiffs claims for malicious abuse of process, perjury and false statements are based on court testimony," thereby entitling them to judgment as a matter of law on these claims. Doc. 349 at 6. The Court assumes that the Gordons base this statement on Plaintiffs' statement in Count 12, ¶ 268 of the second amended complaint that "Elizabeth Gordon [has] perjured or made false statements under Oath; .

11

. . Elizabeth Gordon in multiple trials." While there are many allegations of false statement, slander, and malicious prosecution against the Gordons in the body of the complaint, however, none are based on Gordon's court testimony. The second amended complaint makes the following allegations regarding the Gordons' false statements and malicious abuse of process:

> On January 23, 2005 Mrs. Gordon called 911 to report that a raging fire had been started by the Plaintiffs and was going into her property. Upon arrival of two Sheriffs Department officers, they spoke with the Plaintiffs who stated they had not seen any fires and the Plaintiffs were merely clearing out overgrown brush from the front of their property with a chain and pole saw. Mrs. Gordon was cited for filing a false police report. . . . Mrs. Gordon pled no contest.

Doc. 168 at ¶ 63.

> On February 11, 2005 Elaine Bowden, who works for the Veteran's Administration Hospital PTSD Clinic in Albuquerque, New Mexico received a call from a neighbor, unidentified, using Plaintiff Miguel's social security number released by the Sheriff's Office. Elaine Bowden was told that the veteran (the Plaintiff) had been threatening neighbors and they were in fear of him and his weapons. Later Mrs. Gordon admitted to (illegally) calling the VA in August, 2005, making bogus accusations to try and make more trouble for the Plaintiff.

Doc. 168 at ¶ 69.

> On February 25, 2005 Mrs. Gordon sought the aid of her part time helpers, Seth and Margaret Catlin to trespass on Plaintiff's property and take photos again. Inga told them to leave and they ignored her. Mrs. Gordon later filed false charges of battery against the Plaintiff.

Doc. 168 at ¶ 72. The Gordons address none of these allegations in the summary-judgment motion, and the allegations support claims for slander and malicious abuse of process for which the doctrine of absolute immunity for court testimony does not apply.

The Gordons have established entitlement to summary judgment only on pure trespass claims arising from alleged trespass on the Gordon Road. They have not met their initial burden under Rule 56 to demonstrate that there are no genuine issues of material fact on the Plaintiffs' remaining claims.

WHEREFORE,

**IT IS ORDERED** that the Gordons' First Motion for Summary Judgment [Doc. 349] is

Granted in part and Denied in part and that the Gordons are entitled to summary judgment only on

those trespass claims related to alleged trespass on the Gordon Road.

_____

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**